Good morning, your honors. Robert Brandt. I wish I could introduce myself as a 3L, but I haven't been a 3L in about 25 years. I am a suburban dad and a full-time bankruptcy attorney. My client is Mr. Cook, the debtor in this case. As coincidence would have it, that is also Mr. Cook, but that is a distinguished attorney. That is not Mr. Cook, my client. They just share the last name. The posture of the case, the way I see it, is as follows. This is a Chapter 13 case, and I say this semi-in jest, where the goal of the Chapter 13 debtor is to pay as little as humanly possible within the bounds of the law. Then you have the Sheriff's Office, that would be the Chapter 13 trustee, whose job is to squeeze as much money out of you as humanly and legally possible. Before you get started too far, can you tell us what is the current status of the plan of your client's adherence and how many more payments remain? Yes. Regretfully, there are only, I believe, three months left in the plan. So the case could become actually moot, Article 3 moot, not just equitably moot? That is correct, Your Honor. Yes. Thank you. I'm glad you're an expert on bankruptcy law, because I've got some questions for you on this procedure here. But I do agree the question of whether the equitable relief should be something applied to Chapter 13. But this is an interesting case. The first plan submitted, your client submitted, because is that the way it works? You have to submit one when you want one. So you submitted one. I guess the total is like $7,000 or so. Yes, Your Honor. The court then, or at least the judge then says, no, there's some problems here because you got a $9,000, $8,000 profit you made off the house. We don't know what happened. You called these gifts that were made to your children and your father. So comes back and corrects that and says those are loans and all that sort of thing. But then a second plan is submitted. And so the question, at least from a bankruptcy perspective, if you submit a first plan and that's the debtor that's doing it, and then there's a second plan the debtor didn't support, the basis for submitting a plan, is he limited to submit plans that he thinks or believes he can do? Yes, I would answer that by saying it's essentially you put your best foot forward and you present your paper to your high school teacher, and she either accepts it and says, very good, plan is confirmed, whatever it is, $400 a month. Or the court says, no, you got it wrong, I don't believe this or that is correct, which almost always means you need. The thing I want you to reach is I don't understand you got plan one, two, three, and four. Yes, sir. It keeps going up until you finally get to $20,000. Daddy owes us $333,000, but it's $20,000. You're going to pay back on this by the time you plan. Let's take plan four. He submits it, same basis. This is something he believes he can pay. But he says you should have taken one, the lower amount. Yes. But from a creditor perspective, you ought to be paying the best you can do under the circumstances. It seems to me that creditors are entitled, you're entitled to relief, but you're entitled to pay zero. So you could put a plan and say zero or $5, but if ultimately you submit a plan that says $20,000, I'm not following why you, and here's the kicker. You didn't ask to stay anything. You didn't ask to stay the first plan. It says, okay, this is what I can do. I suppose, and here's the question. Could a debtor refuse to submit a second plan? So I think there were three questions there. Answer that question because that's intriguing to me. Yes, but the ramifications are the case gets dismissed. So then he appeals from the failure to accept the first plan. Except that the Supreme Court of the United States said, nope, we're not going to do that anymore. For years the circuits were battling. Anyway, and then it made it up to the Supreme Court, and the Supreme Court says. So he has to submit a second plan. You have to submit a second plan. You have to have a confirmed plan. So if you submit a second plan, that second plan, if it's $7,000, what was it? The second one went to how much? Honestly. Well, let's say $20,000. Let's say up to $20,000 because $7,000 to $20,000 doesn't seem like a lot to me for $330,000. Most people walk away and say hallelujah instead of coming to appeal. If I could pay you $20,000 for a $33,000 debt, I would not be standing in the Fourth Circuit for some reason. I'm telling you. That's just my personal opinion. That's what I'm trying to make sense out of it. I can answer that. I understand. I mean I could get it if you ultimately end up paying $150,000, but $20,000, but I got that. But my question is when he submits this fourth plan and he's obligated to do so, he hasn't asked the court to stay the first one. The fourth plan, he's telling the court I can do this within the parameters. Was he required from $7,000? Could he have gone to $7,500 or $8,000? If I could try to answer that? Yeah, give me a shot at this. I think that the elephant in the room question is why is your client being so greedy? No, no, that's not my question. I got that. I got why your client is greedy. He doesn't want to pay all that. But that's not the issue I'm confronting. I'm confronting what is the effect of the second plan? What is the basis? Because do you get to submit a plan and then object to what you submitted? Is that something you do? Can you submit a first plan and then say I object to my first plan? No. Can you object to the second plan? Yes. So you can object to the second plan because you think the first plan was better. Oh, absolutely, yes. But you don't ask the court to stay anything. Right. So, yes, in reading the decision of the Supreme Court of the United States and other case law that followed since that monumental decision, yes, there are certainly judges that have said in order to make the record perfectly clear, we want debtor's counsel to go through the highly unusual step of objecting to his own plan, which is bizarre because 99% of the time the objections come from the trustee. It doesn't seem to make sense, does it? Right. I mean you submit something and say I can pay this, but I object to me paying what I can pay. Yes. I object to this amount because. . . You see why this is a bad case for equitable relief to be coming? You see, this is in all the cases. I don't know if this is a good case. I mean when I think about the equities of what's going on here and maybe we shouldn't consider the differential. Again, you're saying that the first one should be accepted, I guess, as a matter of law.  But that's going to the merits of this. Right. It's going to the merits of it. Right. And I don't know if we need to get to the merits of it if we say you can't. It gets there, and we could go there. But anyway, this is an interesting bankruptcy case to bring in this posture here. But maybe I'll let you go ahead and argue the case. In my minute and a half, and I heard common sense and speak plainly, what this whole case is, if I could take off my lawyer hat, you did me wrong. You should have approved the first plan, $200 a month. Not because I said so, because Congress said so. Because Congress says my VA disability money, and that's where, hey, you've got this extra money, VA disability money, and Congress says you don't have to turn it over. And if all we had was you did me wrong, that's one thing. But if I found out you've got a $98,000 profit on a house over there, and I don't know what you did with it, and then I know you gave money to your children, and you say they were gifts, and then you later change and say they're loans, that's a little bit more than you did me wrong. Your Honor, respectfully. Not like you're doing the creditors wrong. That's really what it sounds like. The creditors got done wrong on here somewhere. In my 37 seconds, respectfully. It just seems like a lot of audacity to me, but that's just my perspective. Right. The audacity was a lot of sizzle, a lot of language that seemed colorful. Right? Hey, you did this. No, no, no, no. I'm not giving colorful. I'm giving facts. Right. There's nothing colorful about $98,000 on a house. Nothing colorful about the tens of thousands of dollars you gave to, as you say, paid back loans of $5,000 to dad. There's nothing colorful about that. That's facts. I mean, color is the case. The case is colorful. Yeah, I agree with that. Yes, Your Honor. I think my time is up. Yes. Thank you. That's great. Let's go. Good morning, judges of the Fourth Circuit, and may it please the court. My name is Richard Cook. I represent Amici Curie, the National Association of Consumer Bankruptcy Attorneys and the National Consumer Bankruptcy Rights Center. We are involved in this case for the singular reason because equitable mootness was invoked by the district court in this case. The underlying merits of the appeal, we are not taking a position, and we concede that we're not here because of that. We're not touching on that. I grant you that. I'm not going to give you the same question. Yours is a legal argument. It's interesting. It's a strong legal argument, I think, because these are normally in cases, Chapter 11 and some other type of much bigger type situations. This is the first time we're dealing with it in a Chapter 13 venue. But that was a different – maybe someone would come up with me, but I'm going to leave it alone. I'll try to answer some of the questions you did bring up. But talking about equitable mootness, it's a judicially created doctrine that was created by the Ninth Circuit in 1981. And it was in response to a massive Chapter 11 case that transferred multiple pieces of real estate. And the belief with equitable mootness is, well, if we reverse the confirmation of that plan, we're going to be undoing all of these transactions that have closed. And these were third parties, people that weren't parties in the bankruptcy case. It's not fair to them. The bankruptcy rules at that time, it was Bankruptcy Rule 805. It's now Bankruptcy Rule 8007. It's additionally codified at 11 U.S.C. 363M. If you do not get a stay pending appeal of a transfer of property, then that can statutorily moot an appeal. And so that's what this was born from, very complex Chapter 11 cases, because as you pointed out, Judge Winn, there is no circuit that has extended equitable mootness to a Chapter 13 case. But couldn't there be a Chapter 13 bankruptcy that was complex and equitable mootness could be applied? A hundred percent. And we're not trying to say wholesale you can't apply in a 13 case. So you're not asking for a categorical rule? It would need to be a conveyance of property to like a third party, because in a Chapter 13 plan, you do have the ability to transfer property to a third party. That ability exists. It didn't happen here. When this debtor filed for bankruptcy protection, there was no real estate. So you're suggesting that on these facts, equitable mootness was inappropriate, not that there should be a categorical distinction between Chapter 11 and Chapter 13? Correct. I think when you do involve the rights of third parties, which here we don't have that. We just have four unsecured creditors totaling $116,000, receiving parts of that $20,000 that's getting paid in. Those are folks who voluntarily filed proofs of claim with the bankruptcy court, submitted to the bankruptcy court's jurisdiction. The 13 trustee is basically a fiduciary on behalf of those unsecured creditors looking out for them. So we don't have those same concerns. And what's our standard of review? Standard of review, there isn't. As we point out, this court has not adopted a standard of review. Thank you so much for asking that, Judge Berner. This court has not adopted a standard of review for looking at questions of equitable mootness. There is a conflict between the circuits as to the appropriate standard of review. It is our position it should be de novo, and there's three reasons for that. First, equitable mootness is only raised on appeal for the first time. This is not an issue that bankruptcy courts address head on. And so because it's an appellate court hearing it for the first time, we don't think that there's the same implications, you know, as far as, like, reviewing facts. Because that's the second part is there's not really factual determinations that we need to rely upon in this analysis. Right, but it's an equitable doctrine, and generally when district courts act within their equitable power, we review for abuse of discretion. I mean, I guess, but I guess that the circuit court has held that. There's another circuit court that's held that. Right, and the courts have gone both ways. It's just one of those. We think because it's first impression, and the admonishment, I mean, we even have, I think, subsequent to those decisions we've had the Moak Mall decision from the U.S. Supreme Court, which discourages what they call, like, these types of mootness, which they mean equitable mootness. I think in light of that, you really want courts to hear cases on the merits, because going to your earlier point, Judge Berner, it's like, well, what about Article III mootness if there's just three months left in the plan? We are in this procedural. And he's only asking for prospective relief. Well, we're in this procedural posture. So when you only ask him for prospective relief, he says three months. I don't know how many months. I mean, I already paid this, but it might have two months. You're talking two months of payment, and then this thing is moot. Is that right? Unless there's some other type of relief. There is some other type of relief, and if you look at 11 U.S.C. 502J, so it's the ability to kind of revisit claims. The trustee holds the right to claw monies back from creditors who are overpaying. He's only asking for prospective relief. I understand that. It's a right the trustee holds. So I know what the debtor is asking for. The trustee holds the right. And the trustee is a part of this, too. It brought this in trying to get them to go back and give him relief? I don't think the trustee is asking for that. But I guess what I'm saying is there is a possibility of relief here, of money being refunded back. I don't remember where it would come from. It would come from the creditors who were paid under the plan. They would give money back. So 502J of the code specifically contemplates that if a creditor was overpaid on its proof of claim, the trustee holds the right to be able to get that money back. Do you think it's an incident the trustee is going to go and ask those people to give money back for something that he's only asking for prospective relief? The trustee is here. He can speak to them. You don't credibly believe that. Well, it's the district court that put us in this position, though. If they heard the merits of this case the first time, it wouldn't have delayed the case by almost two years. And so it's the quagmire created by the district court itself that has put us in this position. Is it typical to ask for a stay when you go from a first to a second plan? In other words, can you ask for a stay? Can you? Yes. Do you? No. And there's a couple reasons. One, cost. You're talking about consumer attorneys and having them have competent counsel to seek stays in the bankruptcy court, the district court. But this court, so we talked about the Supreme Court case. Why is it cost? I mean, you just asked, I want this to be stayed. Well, I guess it's more for the attorneys. The attorney puts one little motion in a couple of paragraphs that we asked that this would be stayed. Your determination that the first plan was denied, we asked you to stay that, stay the enforcement of it. I think it would be slightly more complex. What's expensive about that? Well, I guess let me get to the second point then. No, no, no. I want to hear that answer because I like bankruptcy law and I'm trying to figure out. You say it's expensive because bankruptcy law is interesting. There's a lot of money floating around here. I want to know the answer of what makes that expensive to simply ask for this to be stayed. There's the time aspect. You have to do it within that certain 14-day window. You also need to have competent counsel that knows the various elements. I guess I take it as being a little more nuanced. All you're asking for is to be stayed. You've been denied. And all you want to do is say, I mean, can't you just say I want that stayed? I'm going to submit my new plan, but I'm doing it objecting to the fact I have to do it, and I want you to stay that. Otherwise, when you submit the new plan, it's like, well, okay, I'm going to go back and revisit it, and this is the best I can do here. A couple points to that. So Bullard v. Blue Hills Bank first tells us that interlocutory appeal or the denial of confirmation of a plan is interlocutory. And so you talk about you could get a stay. What this court has done, and we saw this in Trantham v. Tate from the Fourth Circuit here two years ago, that is a case where you've talked about the debtor then has to file a plan that what I call an offending plan, a plan that it disagrees with. The debtor then objects to its own plan to then have a confirmation order, which is now a final order. In other words, a debtor can file a plan that I guess essentially says I can't do, or is that it, or what does it mean? It doesn't meet the criteria for me doing this, but I'm going to do it because you're forcing me to give something else. Is that what you're saying? Essentially, they're filing a plan that they think the court wants and would confirm, but they're objecting to having to. If you were doing that, is there some requirement that you have to go up considerably higher than the first plan? In other words, could it have gone from $7,000 to $7,500? I mean, it's possible. It's generally a numbers game based on, for example, you have to satisfy the liquidation test. What would creditors get in a hypothetical seven? And that's generally a number that is somewhat readily ascertainable. You would look at what could be recovered, certain expenses from it, so there's a lot of times, yes, a number. There's a number that you probably need to hit here because these transfers could have been avoided and recovered by a seven trustee, so that's why these additional monies need to be paid in. Is there any instance where if you do not submit a plan that's acceptable at some point in time, the court or the trustee or someone can submit a plan? No. Debtor is the only one who can file a plan. And they can't change the plan or do anything with it? You either got to take what he says or nothing? Well, the way the court works is it's kind of a thumbs up or thumbs down with the court. Like a baseball commissioner. The court can basically say if you would have done a few things, I would have confirmed it, but the court can't come in, redline it, and based on those red lines now confirm the plan. That's not how it works. They can send it back. And in terms of our review, if we were to reach the bankruptcy court's finding that the plan was not proposed in good faith, we review that for clear error? I believe that's correct, Your Honor. So that's a highly deferential standard? I believe so. And why was that a clearly erroneous finding? We're not taking a position on the ultimate merit. We're here based solely on equitable mootness. But if we agree with you on equitable mootness, then the merits are still at issue. Well, I guess my position is if you agree on equitable mootness, I think the district court needs to be the first court of review. There are three months left in the plan. Well, I guess I'll speak bluntly. If this court holds that equitable mootness was improper by the district court but still – It seems to be exacerbating the very problem that you're pointing to, that the equitable mootness caused delay. So if we were to find equitable mootness was improper and not reach the merits when we have the record before us, certainly we could allow for it to be reviewed. And sometimes we say we're a court of review and not first view. But here we're facing a three-month to actual Article III mootness issue. I think if the opinion of this court was clear that equitable mootness was improper, should not have been done, but still upholds the ultimate – it still ultimately affirms the bankruptcy court, it's the position of amici. Like we're fine with that. We are here – You don't have a dog in that fight. Your dog is – you just don't want us to say equitable mootness applies as Chapter 13. Whatever happens in this case, that debtor, he's on his own then. That's all you're here for. Correct, Your Honor, because it will harm debtors across this circuit. I mean this case has ramifications far beyond this one because, as is pointed out, we cited in the brief and all the criticism of equitable mootness. There is a race in Chapter 11 to confirm plans and push monies out the door and complete transactions so that debtors can then use equitable mootness as the shield. If it goes moot, then you still win because if ultimately the three months goes, it goes moot, we haven't said a word about it. You're okay with that too, aren't you? Or do you want us to say something? Are you sure you want us to say something? Do you want us to say something if there's an opportunity to dismiss this case as moot? We would like this court to say equitable mootness was inappropriately invoked by the district court. And no court in the nation has gone there yet, right? Not in a Chapter 13 case. Right. And you want us to now opine on it and risk the chance that we could go the other way when you don't have to take that if it's moot. You sure? I mean, yes. I mean, yes, Your Honor, because we'll also think about it from this perspective then. If it's upheld, this will become – And then even it's only going to apply to full circuit. Well, it'll be a – well, we're a national organization. It would be a shield now used by debtors because this will cut both ways to where when a debtor confirms a plan that now the trustee and creditors have objected to and have issues with, if they did not seek a stay pending appeal, then debtors will be able to use this as a cudgel to cut off those rights on appeal, which is exactly why all the other circuits have had problems with the way equitable mootness is invoked in Chapter 11 cases. We don't think it needs to now start infecting Chapter 13 cases. All right. Thank you, Judge. Thank you, Mr. Cook. Appreciate it.  Good morning, Your Honors. I'm Thomas Gorman. I'm identified on the caption as just Chapter 13 trustee, but my name is Thomas Gorman, as I said. The issue here is the district court's order dismissing debtors' appeal on the grounds that the matter had become equitably moot by virtue of the debtor's failure to seek a stay pending appeal. And Your Honors asked a lot of questions. The one I don't think was asked is why didn't the debtor use Bankruptcy Rule 8007 at either of the two junctures he could have and seek an appeal, a stay pending appeal, and then we wouldn't be here. But there's a rule for this. It wasn't invoked or complied with, and here we are. The matter is now moot. It was moot in December 24 when Judge Notgenhoff issued his ruling. It's now moot here today by virtue of the passage of time. Debtor's counsel's appellant's representations that the plan is now in its 33rd month of its 36 terms. When was the first plan issued? Just remind me of that. When did he submit the first plan? Within a month of the petition. And then how long was it before finally the bankruptcy court said, okay, plan four is good? Matt, a moment. Yes, just give me a ballpark figure. I can give you. The petition in this case was filed May of 23. The plan was confirmed in February of 24, so it was roughly a nine-month process. So the process allows when you put a plan in place for them to begin to make the payments at that point. It's required. They have to start the payments. I've been asked about stay or something like that if you want to go back to the first. Could a stay been asked of number four? Yes. And is it usual for that to be asked for? Yes and no. There were two junctures a stay could have been asked for. The first one was a denial of confirmation of the first plan. Debtor would have had to seek an interlocutory appeal, because that is an interlocutory order, and a stay pending appeal. Debtor did neither. Then later, there was a second opportunity. When the fourth plan was confirmed, no money goes out until the plan is confirmed. So at that point, the debtor had a second opportunity to ask for a stay pending appeal and could have said, Judge, let the trustee disperse the $200 a month. I agree I should have been paying. Make him hold back the extra $425 until I can get a ruling from a higher court on whether that first plan should have been used. But there's no requirement that he seek a stay. Pardon? There's no requirement that a stay be sought. No. And you open by saying the district court ruled on the basis that the applicant failed to seek a stay, but that's just one of four factors, and the district court found that all four factors weigh in favor of equitable mootness, not simply that factor. And it just strikes me that your argument that the failure to seek a stay necessarily means equitable mootness is appropriate de facto creates a rule that the debtor must seek a stay. Otherwise equitable mootness will be imposed upon him. Let me make this one point. The reason the stay is important here isn't the confirmation, but the money going out to the creditors. Under the statute, I'm required to absent a stay, disperse to creditors. That's what makes this moot. Counsel for the amici argues that they voluntarily filed claims, those creditors. That's true, but they weren't voluntarily. The debtor filed a voluntary position. The creditors had to file proofs of claim to get paid. Your Honor mentioned a $300,000 number. Counsel mentioned a $100,000 number. The difference is only some creditors filed proofs of claim. Those are the only ones who get paid. So it wasn't a voluntary process by the creditors to participate. They had no choice or the debts get discharged. Having filed a claim, no stay being issued, me holding money, confirmed plan, the money has gone out the door. Of the $20,000 the debtor has paid in, $18,000, I'm using round numbers, has been dispersed. That's what made this matter moot then. But the bankruptcy code doesn't say if a bunch of money has already been paid and there's not a lot left to be paid, then there's no right of appeal. This is a judge-made doctrine. It's the doctrine of equitable mootness that says that. Nothing in the code. Right. And are there cases where this doctrine is applied? Are there appellate cases where this doctrine has been applied in the context of basically fairly simple bankruptcy plans like this one? Not a lot. No published opinions. There are no appellate opinions where that's been applied. Is it common for district courts to apply the equitable mootness in the context of these small dollar bankruptcies? It's not common for them to go up to it on appeal in the first instance. Is it common for district courts to apply the doctrine? There's this one. There's two more pending in the district court right now involving the same counsel. Other than that, I have no experiences with this issue. I've come up three times in the 40 years I've been practicing. The answer is no. No. It's not common. No. These cases usually die at the bankruptcy court level. Court rules, thumbs up, thumbs down. Debtor files the next plan, and eventually a combo number, and it's happened here. The debtor performs, and the case gets closed out. But my sole point is with 33 out of 36 months, the money's down out the door. The case is moot, and the debtor had the option, not the requirement, the option of seeking. Is it only three months left on the payment? Yes. It's three months, and how much is it being paid per month? $625. Another $1,875 he's done. And the differential between the six and the first plan would have been what per month? It was $200 a month was the first plan. The last plan included $200 a month up to the point of confirmation, and $625 thereafter. So we're talking about amount in dispute would be if you said the first plan would have gone because he's only asking for perspective relief. Right. I understand the expert tells me you can go back and make creditors give money in retrospect, even though they only ask for perspective. I could theoretically sue the creditors. Even though it's been confirmed, and these people have been receiving money, just like getting a Social Security check. If you get one that's over, they'll make you go back and give it back. So you've got the same situation here. I suppose theoretically I could sue them for disgorgement if the courts were to reverse and remand. Any chance of that. But had the debtor filed a motion for state pending appeal, none of that would have – we wouldn't be talking about this. So there's a rule there that allows this to be prevented. Mr. Gorman, help me with this. The old saying is that you don't bid against yourself. Well, it seemed to me when they made the first offer and it was refused or denied, couldn't they just, as they say, stand pat? The court would have then suggested what the amount should be?  Counsel had it right. When confirmation is denied, debtor has the option of either filing a new plan to try to meet the court's concerns or appealing that plan on an interlocutory basis and seeking a statement. So you're required to keep on going up. No, no. You can appeal it. I mean, if you don't appeal, I mean. The only option is appeal or keep going up. But it's not always denial of confirmation on dollar amounts. Sometimes there's a feasibility issue. The debtor can come back and say, I have a second job now. You denied confirmation last time. Change of circumstances. Yes, yes. But you have to file – Chapter 13 moves pretty quick. You have a narrow window of time when confirmation is denied to file a new plan, convert your case to another chapter, appeal the confirmation. You have to do something. Unlike Chapter 11, they can't lie fallow for any period of time. So that procedure really sort of helps the object somewhat is trying to make sure this case doesn't get to the point of equitable mootness by trying to work it until it finds that sweet spot that we can agree on. But if you don't avail yourself of those things you talked about, then you run the risk that it ripens into the equitable mootness. Ultimately, your case would get dismissed and you didn't get the benefit of the bankruptcy. Right, right. As I said – well, I started to say, I think. In their brief, the appellant asks the court at page 14 for specifically prospective relief. What the debtor is asked for is that the court, going forward, allow him to pay the $200 a month amount he wished for. The debtor is not asking for retroactive relief, dischargement of money. The debtor at page 14 has specifically said, I'd like this court, sitting in DeNova Review, to modify my plan going forward for whatever plan term this left to put me down at that $200 a month amount I felt I should have been at the beginning. So the debtor now is asking this court for roughly $1,200. What is the representation, at least it seems to me, that a debtor submits a plan, there has to be something there that they do so in, I guess, good faith is a strong word, but some belief I can pay this. I mean, we got the law, but this is really about money. Bankruptcy is about money. If you talk about the differential money, I called up the little figures, the big figures, and people blew their heads off like it was no big deal. It was all about money and a difference of paying $600 or $200 per month. But I will pay the $600 all the way up until the time the appeal court could rule it my favor. Then I will pay the $200 for the rest of the time, which is basically $200 or $300 for the next three months. We have a lot of cases up here, and this must be about law. We don't spend a lot of time talking about $600. It costs $600 for you guys to come in this courtroom. It makes no sense. I mean, I got the bankruptcy expert on it, on equitable type relief. I got that. That's a big issue in this case here. But the actual facts of it, it's almost like why would you bring this case? I didn't. I'm appellee. I mean, if Your Honor is pointing out that the cost of my hotel, gas, and food getting down here is more than the $1,200 in dispute, you are correct. That's why these small-dollar cases don't get here very often. In the light most favorable to the other side, they can be lauded if they consider this an important issue. For spending time on it, we all go to law school. Well, the issue is important. The ultimate issue in this case of whether the equitable relief is available is very important. I'm just saying it's the motivation to bring in a case of this sort. But what is disturbing me still is, which I just don't understand, this bankruptcy law, that's what I'm trying to get clarity on it, is when you submit that second, third, and fourth plan, what are you submitting? I mean, why would you submit, if it's money, why would you submit something that you would feel so strongly about that you're going to appeal it? I don't know. But what happens? Because couldn't you just, I mean, what would happen if you come back and said, okay, 7,000 I can't do, but I can do 7,100? What happens then? Then the bankruptcy court considers that plan, denies confirmation or not, and if the court felt that your $100 increase was so incremental that it should be insulting, the bankruptcy court might deny you leave to file another plan. Which means that's the end of it. Subject to your appeal laws. Then you can appeal. That's not interlocking, sir. Yes, sir. Yes, sir. But the debtor doesn't want to risk that because if you don't get it, because that's a question of whether you can file bankruptcy, and the end result of that, you're going to have $3,000, you're not going to get relief. Okay. So I understand that you're arguing in the alternative that even if we find equitable mootness not appropriately applied here, that we should reach the merits and affirm on the merits. Is that right? No, ma'am. I think all that's here is the issue of the equitable mootness. That was the sole rule of the district court's opinion. But I've heard, I've been listening, I've heard the court say that sometimes you look beyond that for efficiency. But procedurally, I think, before the court today, is solely the issue of whether the district court erred in applying the doctrine of equitable mootness. And the district court, in applying that doctrine, didn't reach the merits? No, ma'am. It did not. It said it didn't need to because the matter was moot. But really, the merits are really two issues. There was the issue of the bad faith, and then there was the issue of the liquidation test. Is that right? They go hand-in-hand. Because the transfers that went out, if a 7th trustee could bring them back, that was part of the liquidation test. So good faith was making the transfers in the first instance, and the liquidation test is what would have been available for 7th if a trustee had gone, recovered those preferential or fraudulent transfers, and brought it in. And so in reaching the merits, the district court or whichever court was reaching the merits would have to reach both? The good faith issue and the liquidation test issue? Yes. The way I see it is the court would remand it. The district court would then remand it to the bankruptcy court for further findings. Or actually, I may have misspoke. Maybe the record at the first hearing was sufficient for the district court to look at that de novo and say the bankruptcy court erred or did not err based on the evidence before it. And three months will have passed by the time they get to it, and this will be moved before then. The way the calendar looks. It's going to be moved either way. There's no way they're going to hear this case. Do they hear that case? If we made a decision, which it takes us some time to issue an opinion on it, could be a month, could be two months, we send it back, three months is gone, what happens then when it goes? We send them a case that's going to be moved, right? Yes. And your brief, I mean, half your brief. What's that? Really, half your brief argues that the bankruptcy court did not err. Because the other side argued it in their brief, I had to be responsive to that. But I think procedurally, all the district court ruled on was the equitable mootness. But if I can make one point before I run out of time, again, Your Honor talks about the frustration, what happens this, what happens that. That's all avoidable. If a stay pending appeal had been sought, we wouldn't be at the 33-month of an almost completed plan. There's a rule there. It wasn't used. So I don't know if the court should be doing backflips, trying to do... No wrong was done here. The court shouldn't be twisting pretzels trying to make it right. The debtor had two opportunities to see to stay pending appeal, didn't. The case is now effectively concluded. Creditors have received their monies. That's unlikely to come back. And the district court ruling should be affirmed. Thank you. Do you have any other questions? Thank you, counsel. All right. One last question. Before you sit, one last question. Because it's kind of something... I don't want them to be blindsided. You know, sometimes we will decide something assuming without argument that that applies. And we send it back. We'll send a case that's going to be moot. And we won't decide that issue. I mean, I don't... I mean, it just... I just don't understand this case, the procedural postulate. But, I mean, that can be done. I mean, this court could very well say, assuming for the sake of argument that it does not apply, we send it back for the district court to consider it. And then for the bankers to consider it. They go back. And, of course, in a normal court statement, they'd come back and then we would get it. But by the time it goes back there and it gets sent, it's done. Because it's only prospective relief that's being sought. If he was seeking relief for the whole thing, it would be different. But I don't... I mean, anyway. I don't get it either. And the only argument I heard is the academic issue of getting a ruling on the applicability of equitable mootness in 13. We don't do advisory opinions. That was my thinking. Any other questions? Thank you, counsel. Thank you. All right. We'll ask the court to adjourn the court. Oh, we got one more. It was a long day. We do have one more, don't we? Thank you, counsel. We'll come down and greet you and then we'll proceed to our final case for the afternoon.
judges: Roger L. Gregory, James Andrew Wynn, Nicole G. Berner